UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————— x

MARK E. MCKINNEY, Individually and on      :    Civil Action No.
Behalf of All Others Similarly Situated,   :
                                           :    CLASS ACTION COMPLAINT
                     Plaintiff,            :
                                           :
          vs.                              :    JURY TRIAL DEMANDED
                                           :
MORGAN STANLEY, MORGAN STANLEY             :
SMITH BARNEY LLC, and E*TRADE              :
SECURITIES LLC,                            :
                                           :
                     Defendants.           :
                                           :
———————————————————— x

By and through his undersigned counsel, Mark E. McKinney ("Plaintiff") brings this class action against defendants Morgan Stanley, Morgan Stanley Smith Barney LLC ("MSSB"), and E*TRADE Securities LLC ("E*TRADE") (collectively, "Defendants"), upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, including, without limitation, review and analysis of: (a) documents created and distributed by Defendants; (b) public filings made by Morgan Stanley with the U.S. Securities and Exchange Commission ("SEC"); (c) press releases disseminated by Defendants; and (d) news articles, websites, and other publicly available information concerning Defendants. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## SUMMARY OF THE ACTION

1.     Plaintiff brings this class action to recover damages arising out of Defendants' unlawful conduct related to their Bank Deposit Program, which transferred idle customer cash into interest-bearing "cash sweep" accounts.

2.     Under the Bank Deposit Program, Defendants swept customers' idle cash deposits into separate accounts that are highly lucrative for Defendants and their affiliate banks but pay unreasonably low, below-market interest rates to customers. As such, Defendants use the Bank Deposit Program to generate massive revenue for themselves at the expense of their customers.

3.     Defendants' use of the Bank Deposit Program to enrich themselves by paying unreasonably low interest rates breaches their fiduciary duties and contractual obligations to customers and violates several state and federal laws including the Racketeer Influenced and Corrupt Organizations Act ("RICO Statute") and the Investment Advisers Act of 1940 ("Advisers Act").

4.      Accordingly, Defendants' Bank Deposit Program has come under federal regulatory scrutiny.  In August 2024, Morgan Stanley announced that the Bank Deposit Program was under investigation by the SEC for potential violations of the federal statue governing the conduct of investment advisors.

### JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction under the Class Action Fairness Act of 2005, 28 U.S.C. §1332(d)(2) and (6), because: (a) there are 100 or more class members; (b) there is an aggregate amount in controversy exceeding $5,000,000.00 exclusive of interest and costs; and (c) there is minimal diversity because at least one plaintiff and one defendant are citizens of different states.  This Court also has subject matter jurisdiction under 18 U.S.C. §1964(c), 28 U.S.C. §1331, and 50 U.S.C. §80b-14 because Plaintiff brings claims arising under the RICO Statute, 18 U.S.C. §1962, and the Advisers Act, 50 U.S.C. §§80b-1-21.

6.      This Court has personal jurisdiction over Defendants because, during the relevant time period, Defendants had offices in, did sufficient business in, had sufficient contacts with, and intentionally avail themselves of the laws and markets of New York through the promotion, sale, marketing, distribution, and operation of their products and services.

7.      Venue is proper in this District pursuant to 28 U.S.C. §1391 because, during the relevant time period, Defendants transact business and had offices in this District, and many of the acts and practices complained of herein occur in substantial part in this District.

8.      In connection with the challenged conduct, Defendants, directly or indirectly, use the means and instrumentalities of interstate commerce, including, without limitation, the United States mails and interstate telephone communications.

## PARTIES

**Plaintiff**

9.      Plaintiff Mark E. McKinney is a citizen of Arizona.  During the relevant time period, Plaintiff was an E*TRADE account holder.  As an E*TRADE account holder, Plaintiff's uninvested cash was swept into the banks that Defendants selected in their discretion at the unreasonably low interest rates alleged herein pursuant to the Bank Deposit Program.

**Defendants**

10.      Defendant Morgan Stanley is a Delaware corporation headquartered at 1585 Broadway, New York, New York 10036.  Morgan Stanley is a financial services company that conducts business throughout the United States, with assets totaling $1.2 trillion, loans totaling approximately $237 billion, and 79,000 employees.  Morgan Stanley is the parent company and control persons of Defendants E*TRADE and MSSB.

11.      Defendant Morgan Stanley Smith Barney LLC is a Delaware limited liability company headquartered at 1585 Broadway, New York, New York 10036.  MSSB is a broker-dealer and a Registered Investment Advisor that offers brokerage and investment advisory services to its nationwide client base.   MSSB acts as its customers' agent for the establishment, maintenance, and operation of the Bank Deposit Program.  MSSB is a wholly owned subsidiary of, and controlled by, Defendant Morgan Stanley.

12.      Defendant E*TRADE Securities LLC is a Delaware limited liability company headquartered at 200 Hudson Street, Jersey City, New Jersey 07302.  E*TRADE is an online brokerage platform that provides direct trading and investing services to customers.  E*TRADE is an indirect, wholly owned subsidiary of, and controlled by, Defendant Morgan Stanley.  Morgan Stanley acquired E*TRADE on October 2, 2020.

## SUBSTANTIVE ALLEGATIONS

**Background on Defendants' Bank Deposit Program**

13.     Morgan Stanley is one of the largest financial services firms in the country.  Morgan Stanley's wholly owned subsidiaries, MSSB and E*TRADE, offer brokerage and investment advisory services to customers nationwide.

14.     Defendants provide the Bank Deposit Program to E*TRADE and MSSB account holders.  For E*TRADE account holders, the terms and conditions of the Bank Deposit Program are set forth in the E*TRADE from Morgan Stanley Client Agreement for Self-Directed Accounts ("Client Agreement")[1] and the Bank Deposit Program Disclosure Statement[2] ("Bank Deposit Statement") (collectively, "Program Documents"), which are posted on the public websites of E*TRADE and Morgan Stanley.  The Client Agreement is governed by the laws of the State of New York and incorporates the terms of the Bank Deposit Statement.

15.     Under the Bank Deposit Program, MSSB automatically sweeps eligible clients' uninvested cash balances into interest bearing deposit accounts ("Deposit Accounts") with a network of bank partners selected by Defendants ("Sweep Banks"), including banks affiliated with Defendants ("Morgan Stanley Sweep Banks").  Funds in the Deposit Accounts at each Sweep Bank are insured by the Federal Deposit Insurance Corporation ("FDIC").

16.     The Program Documents provide that MSSB acts as an agent for customers in the Bank Deposit Program, stating, "[MSSB] as your agent will generally deposit cash in your Deposit

---

[1]    E*TRADE from Morgan Stanley, *E*TRADE from Morgan Stanley Client Agreement for Self-Directed Accounts*, https://us.etrade.com/l/f/agreement-library/client-agreement (Jan. 3, 2023).

[2]    Morgan    Stanley,    *Bank    Deposit    Program    Disclosure    Statement*, https://www.morganstanley.com/content/dam/msdotcom/en/wealth-disclosures/pdfs/BDP_disclosure.pdf (Nov. 2024).

Accounts at a Sweep Bank on the first business day after the cash is received in your Account" and "[MSSB] will remain the agent and custodian for all your deposits in the [Bank Deposit] Program."[3]

17.    The sweep interest rates paid to customers are set by MSSB and the Sweep Banks and can be changed "in their sole discretion and without prior notice to [customers]."[4]

**Defendants Reap Significant Benefits from the Bank Deposit Program to the Detriment of Their Customers, Who Are Paid Unreasonably Low Interest Rates**

18.    The Bank Deposit Program provides highly lucrative financial benefits to Defendants and their affiliated Morgan Stanley Sweep Banks.  The Morgan Stanley Sweep Banks use customer deposits to fund current and new businesses, including lending activities and investments, and pay MSSB an annual account-based fee for use of the deposits.

19.    MSSB admits that its "ability to influence the interest rate on [customers'] Deposit Accounts presents a ***conflict of interest***" because "[t]he lower the amount of interest paid to customers, the greater is the 'spread' earned by the Morgan Stanley Sweep Banks on deposits through the [Bank Deposit] Program."[5]  By increasing the spread through lower interest payments to customers, Defendants and the Morgan Stanley Sweep Banks are able to increase their profits from the Bank Deposit Program.

20.    Due to this adverse financial incentive, Defendants fail to negotiate and secure reasonable sweep interest rates for Bank Deposit Program customers.

---

[3]    *Id.*

[4]    *Id*.

[5]    *Id*.  The SEC also recognizes that "cash sweep programs" are a "common source[] of conflicts of interest."  U.S. Securities and Exchange Commission, Staff Bulletin:  Standards of Conduct for Broker-Dealers and Investment Advisers Conflicts of Interest (Sept. 9, 2024), https://www.sec.gov/tm/iabd-staff-bulletin-conflicts-interest.

21.    As defined in the Oxford English Dictionary, the term "reasonable" is synonymous with "fair" and "equitable."

22.    The U.S. Department of Labor defines a "reasonable" rate of interest as "a rate of interest determinable by reference to short-term rates available to other customers of the bank, those offered by other banks, those available from money market funds, those applicable to short-term instruments such as repurchase agreements, or by reference to a benchmark such as sovereign short term debt (e.g., in the U.S., treasury bills), all in the jurisdiction where the rate is being evaluated."[6]

23.    Similarly, the U.S. Internal Revenue Service defines an "arm's length interest rate" as "a rate of interest which was charged, or would have been charged, at the time the indebtedness arose, in independent transactions with or between unrelated parties under similar circumstances."[7] Thus, an interest rate is reasonable if it is based on a fair market valuation.

24.    In contrast, Defendants' Bank Deposit Program pays below-market interest rates ranging from 0.01% to 0.15% depending on the amount deposited by a customer.[8] These miniscule rates are *significantly* below several objective benchmarks of reasonableness:

- **Competitors' Sweep Programs**. Defendants' sweep interest rates are far below fair market value, as demonstrated by the rates paid by Defendants' competitors who offer FDIC-insured sweep accounts similar to those in the Bank Deposit Program. For example, competitor Moomoo's rate is 4.35%,[9] Webull's rate is

---

[6]    68 Fed. Reg. 34646 (2003).

[7]    26 CFR §1.482-2(a)(2).

[8]    E*TRADE from Morgan Stanley, *Rate Monitor*, https://us.etrade.com/l/options-uninvested-cash/sweep-rates (last visited Nov. 18, 2024).

[9]    Moomoo, *Boost your uninvested cash with 4.6% APY*, https://www.moomoo.com/us/invest/cashsweep (last visited Nov. 18, 2024).

4.00%,[10] Vanguard's rate is 3.90%,[11] Fidelity's rate is 2.32%,[12] and Robert W. Baird's rate is between 1.52% and 3.11%.[13]

- **Defendants' Other Interest-Bearing Accounts**.  Further, the sweep interest rates paid by the Bank Deposit Program are far lower than the interest rates paid by Defendants' other products outside of the Bank Deposit Program.  For example, E*TRADE's FDIC-insured premium savings account pays 4.16%, E*TRADE's FDIC-insured max rate checking account pays 2.96%, Morgan Stanley's money market portfolio (MGPXX) pays 4.38%, and Morgan Stanley's U.S. government money market trust (DWGXX) pays 4.47%.[14]

- **Federal Funds Rate**.  The sweep interest rates in the Bank Deposit Program are also far below the U.S. Federal Reserve's benchmark federal funds rate, currently at 4.50% to 4.75%.

- **Three-Month Treasury Bill Rate**.  The sweep interest rates in the Bank Deposit Program are far below the three-month U.S. treasury bill rate, currently at 4.41%.[15]

- **Repurchase Rate**.  The sweep interest rates in the Bank Deposit Program are well below the overnight interest rate at which the U.S. Federal Reserve repurchases securities from private banks (*i.e.*, the repo rate), which is currently 4.55%.[16]

---

[10]  Webull, *Webull High-Yield Case Management*, https://www.webull.com/cash-management (last visited Nov. 18, 2024).

[11]  Vanguard, *Your cash deserves a good home*, https://investor.vanguard.com/accounts-plans/vanguard-cash-plus-account (last visited Nov. 18, 2024).

[12]  Fidelity, *Fidelity Individual Retirement Accounts (IRA)*, https://digital.fidelity.com/prgw/digital/fdic-interest-rate/ira (last visited Nov. 18, 2024).

[13]  Baird, *Cash Sweep Program*, https://www.rwbaird.com/cashsweeps/ (last visited Nov. 18, 2024).

[14]  E*TRADE from Morgan Stanley, *Rate Monitor*, https://us.etrade.com/l/options-uninvested-cash/sweep-rates (Nov. 18, 2024); E*TRADE from Morgan Stanley, *Banking Rates and Fees*, https://us.etrade.com/bank/bank-rates#tab_5 (Nov. 18, 2024).

[15]  Federal Reserve, *Economy at a Glance – Policy Rate*, https://www.federalreserve.gov/economy-at-a-glance-policy-rate.htm (last visited Nov. 18, 2024); Federal Reserve Bank of St. Louis, *3-Month Treasury Bill Secondary Market Rate, Discount Basis*, https://fred.stlouisfed.org/series/DTB3 (last visited Nov. 18, 2024).

[16]  Federal Reserve Bank of St. Louis, *Overnight Reverse Repurchase Agreements Award Rate: Treasury Securities Sold by the Federal Reserve in the Temporary Open Market Operations*, https://fred.stlouisfed.org/series/RRPONTSYAWARD (last visited Nov. 18, 2024).

25.     These benchmarks individually and collectively demonstrate that the sweep interest rates in the Bank Deposit Program are unreasonable.  As a result, Plaintiff and the Class suffer damages by receiving far lower interest payments than they would receive if the sweep interest rates were reasonable.

**MSSB Breaches Its Contractual Obligations and Fiduciary Duties Related to the Bank Deposit Program**

26.     Under the Program Documents, MSSB agrees to act as its customers' agent, and, thus, is contractually obligated to act in its customers' best interests in seeking and negotiating reasonable sweep interest rates under the Bank Deposit Program.  In other words, reasonableness is implicit in the Program Documents and governs the sweep interest rates paid to customers in the Bank Deposit Program.

27.     However, as discussed above, MSSB fails to act in its customers' best interests because the interest rates that MSSB pays to Bank Deposit Program participants are unreasonable compared to the interest rates paid by competitors and the federal funds rates.

28.     Further, MSSB's conduct related to the Bank Deposit Program violates its fiduciary duties.  As an investment advisor for an actively managed client account, MSSB owes a fiduciary duty to its clients under the Advisers Act.[17]  In particular, MSSB is obligated to "serve the best interest of its client and not subordinate its client's interest to its own" and was not permitted to "place its own interests ahead of the interests of its client."[18]  MSSB owes a similar duty of care to its retail clients pursuant to Regulation Best Interest, which requires it to act in its retail

---

[17]  *See* Securities and Exchange Commission Interpretation Regarding Standards of Conduct for Investment Advisers, 84 Fed. Reg. 134, 17 CFR §276 (July 12, 2019) (interpreting Section 206 of the Advisers Act, 15 U.S.C. §80b-6).

[18]  *Id.*

customers' best interests and prohibits it from placing its own interests ahead of its retail customers' interests.[19]  In violation of these duties, however, MSSB uses the Bank Deposit Program to enrich Defendants and their affiliates at the expense of customers who pay unreasonably low interest rates.

29.    These allegations are strongly supported by the fact that the Bank Deposit Program is under scrutiny from the SEC.  In August 2024, Morgan Stanley disclosed that, "[s]ince April 2024, the firm has been engaged with and is responding to requests for information from the Enforcement Division of the SEC regarding advisory account cash balances swept to affiliate bank deposit programs and compliance with the Investment Advisers Act of 1940."[20]

**Defendants Make Material Misrepresentations and Omissions Regarding the Bank Deposit Program**

30.    In the Program Documents, Defendants make material omissions by failing to disclose that, as discussed above, Defendants established and use the Bank Deposit Program to enrich themselves by paying unreasonably low interest rates to customers in order to increase their financial benefits.

31.    The Program Documents also misleadingly state, "The interest rate is generally based on a variety of factors, including, but not limited to, current market conditions and competitive interest rates."[21]  This statement is misleading and omits material facts because, in

---

[19]  *See* Securities and Exchange Commission, Regulation Best Interest: The Broker-Dealer Standard of Conduct, 84 Fed. Reg. 33318, 33320, 17 C.F.R. §240.15l-1 (July 12, 2019).

[20]  Morgan Stanley, Form 10-Q, at 68 (Aug. 5, 2024), https://www.sec.gov/Archives/edgar/data/895421/000089542124000403/ms-20240630.htm.

[21]  *Bank Deposit Statement*, *supra* n.2.

reality, the Bank Deposit Program always pays below-market and unreasonably low interest rates rather than "market" and "competitive" interest rates.

32.    The Program Documents also misleadingly state that "[t]he interest rates applicable to your Deposit Accounts at the Sweep Banks *may be* higher or lower than the interest rates available on other deposit accounts offered by a Sweep Bank or on deposit accounts offered by other depository institutions" and "[t]he Morgan Stanley Sweep Banks and the Program Banks *can and sometimes do* pay higher interest rates on some deposits they receive directly than they pay on deposits received through the [Bank Deposit] Program."[22]  These statements are misleading and omit material facts because, in reality, the Bank Deposit Program interest rates are *always* significantly below market interest rates.

33.    Moreover, Defendants' statements about potentially *lower* interest rates do not excuse their contractual and fiduciary obligations to pay *reasonable* interest rates, as described above.  These statements must be construed harmoniously with Defendants' contractual and fiduciary obligations.

**Defendants Violate the RICO Statute**

34.    Defendants violate the RICO Statute through their implementation of the Bank Deposit Program.

35.    MSSB and E*TRADE are "enterprises" within the meaning of the RICO Statute. Through MSSB and E*TRADE, Defendants knowingly and intentionally devised and operate the Bank Deposit Program as a scheme to defraud customers, including Plaintiff and the Class. Defendants use the Bank Deposit Program to benefit and enrich themselves through, among other

---

[22]    *Id.*

things, the payment of unreasonably low interest rates to customers on money deposited into the Bank Deposit Program.

36.    The Bank Deposit Program involves commercial activities across state lines, including Defendants' distribution of the Program Documents to customers, and Defendants' receipt and transfer of money deposited by customers.

37.    Through the Bank Deposit Program, Defendants conduct and participate in a pattern of racketeering activity within the meaning of the RICO Statute ("Racketeering Acts"). Defendants' Racketeering Acts include indictable, predicate offenses under 18 U.S.C. §§1341 and 1343 based on Defendants' fraudulent use of interstate mail and wire communications, including posting the materially false and misleading Program Documents on the public websites of E*TRADE and Morgan Stanley and distributing them to customers throughout the country.

38.    The Racketeering Acts are related in that they are taken in furtherance of Defendants' Bank Deposit Program scheme.  The Racketeering Acts occurred, and continue to occur, regularly and continuously over a multi-year period during the operation of the Bank Deposit Program.

39.    Defendants conduct the Racketeering Acts as part of a common conspiracy to violate 18 U.S.C. §1962(c) of the RICO Statute.  Defendants, with knowledge and intent, agreed to the overall objectives of the conspiracy and, through the Racketeering Acts, participate in a common course of conduct in furtherance of the Bank Deposit Program scheme, including posting the materially false and misleading Program Documents on the public websites of E*TRADE and Morgan Stanley and distributing them to customers throughout the country.

40.     As Bank Deposit Program customers, Plaintiff and the Class are damaged by Defendants' Racketeering Acts due to Defendants' payment of unreasonably low interest rates on the money customers deposited into the Bank Deposit Program.

## CLASS ACTION ALLEGATIONS

41.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a Class consisting of all persons who had cash deposits or balances in the Bank Deposit Program ("Class").  Excluded from the Class are Defendants, officers and directors of Defendants at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

42.     The Class members are so numerous that their individual joinder is impracticable. While the exact number of Class members can only be determined by appropriate discovery, Plaintiff believes that Class members number in the thousands, and are geographically dispersed, because Morgan Stanley oversees $7.6 trillion in client assets worldwide.

43.     Plaintiff's claims are typical of Class members' claims because Plaintiff's cash deposits were subject to the Bank Deposit Program, and therefore Plaintiff's claims, and those of all other Class members, arise from the same wrongful conduct by Defendants alleged herein.

44.     Plaintiff will fairly and adequately protect the interests of the Class members and has retained counsel experienced and competent in complex class actions litigation.  Plaintiff has no interests that are contrary to, or in conflict with, the members of the Class that Plaintiff seeks to represent.

45.     The prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish  incompatible  standards  of  conduct  for  the  party  opposing  the  Class  or  a  risk  of

adjudications that, as a practical matter, would be dispositive of the interests of other Class members who were not parties to the adjudications or would substantially impair or impede the ability of such Class members to protect their interests.

46.    Because Defendants act or refuse to act on grounds that apply generally to the Class, final injunctive relief or corresponding declaratory relief is appropriate with respect to the Class as a whole.

47.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual members of the Class may be relatively small, the expense and burden of individual litigation make it impossible for the members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

48.    Questions of law and fact common to the members of the Class predominate over any questions that may affect only individual members in that Defendants act on grounds generally applicable to the entire Class.  Among the questions of law and fact common to the Class are:

       (a)     whether Defendants violate the laws as alleged herein;

       (b)     whether MSSB owes fiduciary duties to members of the Class in connection with the Bank Deposit Program;

       (c)     whether MSSB breaches its fiduciary duties to members of the Class in connection with the Bank Deposit Program;

       (d)     whether MSSB breaches its contractual obligations to members of the Class in connection with the Bank Deposit Program;

       (e)     whether Defendants violate the Advisers Act;

(f)      whether Defendants violate the RICO Statute;

(g)      whether Defendants make material misrepresentations and/or omissions regarding the Bank Deposit Program;

(h)      whether Defendants are unjustly enriched by their wrongful conduct;

(i)      whether the members of the Class sustain damages as a result of the alleged wrongful conduct by Defendants, and, if so, the appropriate measure of damages; and

(j)      whether the members of the Class are entitled to attorneys' fees and costs and, if so, the appropriate amount of attorneys' fees and costs.

## COUNT I

**BREACH OF FIDUCIARY DUTY AGAINST DEFENDANTS
MORGAN STANLEY AND MORGAN STANLEY SMITH BARNEY LLC**

49.      Plaintiff incorporates each of the foregoing paragraphs as though fully set forth herein.

50.      MSSB is the agent of, and investment advisor to, customers enrolled in the Bank Deposit Program, including Plaintiff and the Class.  Morgan Stanley owns and controls MSSB.

51.      MSSB owes fiduciary duties to Plaintiff and the Class, including a duty to act in the best interests of, and deal fairly and honestly with, Plaintiff and the Class.

52.      MSSB violates its duty to act in the best interests of Plaintiff and the Class by using the Bank Deposit Program to enrich itself at the expense of customers who are paid unreasonably low interest rates, as described above.

53.      MSSB also violates its duty to deal fairly and honestly with Plaintiff and the Class by making material misrepresentations and omissions in the Program Documents, as described above.

54.    Further, MSSB violates its duty to act with reasonable care to verify the truthfulness of the information set forth in the Bank Deposit Program, which are materially misleading and omit material facts for the reasons described above.

55.    As a direct and proximate result of MSSB's breach of its fiduciary duties, Plaintiff and the Class suffer damages and are entitled to recover such damages from Defendants.

**COUNT II**

**VIOLATION OF THE INVESTMENT ADVISERS ACT OF 1940
AGAINST DEFENDANTS MORGAN STANLEY AND
MORGAN STANLEY SMITH BARNEY LLC**

56.    Plaintiff incorporates each of the foregoing paragraphs as though fully set forth herein.

57.    MSSB is registered as an investment adviser under the Advisers Act.  Morgan Stanley owns and controls MSSB.

58.    MSSB violates Section 206 of the Advisers Act by failing to serve the best interests of its clients, Plaintiff and the Class, and by placing its own interests ahead of the interests of Plaintiff and the Class in connection with the Bank Deposit Program, as further alleged herein. *See* Securities and Exchange Commission Interpretation Regarding Standards of Conduct for Investment Advisers, 84 Fed. Reg. 134, 17 C.F.R. §276 (July 12, 2019).

59.    The Client Agreement should be deemed void pursuant to Section 215 of the Advisers Act, which provides that every

> (b) . . . contract made in violation of any provision of this title and every contract heretofore or hereafter made, the performance of which involves the violation of, or the continuance of any relationship or practice in violation of any provision of this title, or any rule, regulation, or order thereunder, shall be void (1) as regards the rights of any person who, in violation of any such provision, rule, regulation, or order, shall have made or engaged in the performance of any such contract, and (2) as regards the rights of any person who, not being a party to such contract, shall have acquired any right thereunder with actual knowledge of the facts by reason of

which the making or performance of such contract was in violation of any such provision.

60.     Accordingly, Plaintiff seeks rescission of the Client Agreement and restitution of the consideration given pursuant to its purported terms.

## COUNT III

### BREACH OF CONTRACT AGAINST DEFENDANTS
### MORGAN STANLEY AND MORGAN STANLEY SMITH BARNEY LLC

61.     Plaintiff incorporates each of the foregoing paragraphs as though fully set forth herein.

62.     Plaintiff and Class members entered into the Client Agreement with MSSB concerning the Bank Deposit Program.  Morgan Stanley owns and controls MSSB.

63.     The Client Agreement incorporates the terms of the Bank Deposit Statement. Pursuant to the Bank Deposit Statement, MSSB is contractually obligated to act as an agent on behalf of Plaintiff and the Class, and, thus, is contractually obligated to act in Plaintiff's and the Class' best interests in seeking and negotiating reasonable sweep interest rates under the Bank Deposit Program.

64.     MSSB breached its contractual obligations by failing to provide Plaintiff and the Class with fair and reasonable sweep interest rates on their cash sweep balances in the Bank Deposit Program.  Rather, the sweep interest rates provided by MSSB were below market and unreasonably low.  As such, MSSB denied Plaintiff and the Class the full benefit of their bargain under the Client Agreement.

65.     As a direct and proximate result of MSSB's breach of contract, Plaintiff and the Class sustained damages.

**COUNT IV**

**BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
AGAINST DEFENDANTS MORGAN STANLEY AND
MORGAN STANLEY SMITH BARNEY LLC**

66.     Plaintiff incorporates each of the foregoing paragraphs as though fully set forth

herein.

67.     Plaintiff and Class members entered into the Client Agreement with MSSB

concerning the Bank Deposit Program.  Morgan Stanley owns and controls MSSB.

68.     Implicit in the Client Agreement was a duty of good faith and fair dealing.

69.     MSSB breached its duty of good faith and fair dealing by failing to provide Plaintiff

and the Class with fair and reasonable sweep interest rates on their cash sweep balances in the

Bank Deposit Program.  Rather, the interest rates provided by MSSB Defendants were below

market and unreasonably low.  As such, MSSB denied Plaintiff and the Class the full benefit of

their bargain under the Client Agreement.

70.     As a direct and proximate result of MSSB's breach of the implied covenant of good

faith and fair dealing, Plaintiff and the Class sustained damages.

**COUNT V**

**VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT
ORGANIZATIONS ACT, 18 U.S.C. §1962(c)-(d),
AGAINST ALL DEFENDANTS**

71.     Plaintiff incorporates each of the foregoing paragraphs as though fully set forth

herein.

72.     This claim arises under 18 U.S.C. §1962(c)-(d) of the RICO Statute, which provide

in relevant part:

(c)     It shall be unlawful for any person employed by or associated with any
enterprise engaged in, or the activities of which affect, interstate or foreign

commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . .

(d)    It shall be unlawful for any person to conspire to violate any of the provisions of subsection . . . (c) of this section.

73.    At all relevant times, Defendants were "person[s]" because they are capable of holding a legal or beneficial interest in property.

74.    E*TRADE and MSSB are enterprises engaged in interstate commerce.  Through E*TRADE and MSSB, Defendants knowingly and intentionally devised and operated the Bank Deposit Program as a scheme to defraud investors.  Defendants used the Bank Deposit Program to enrich themselves by paying unreasonably low interest rates to Bank Deposit Program customers.

75.    Defendants conducted and participated in multiple, related Racketeering Acts for the purpose of implementing the Bank Deposit Program.  The Racketeering Acts, which occurred, and continue to occur, regularly and continuously during the operation of the Bank Deposit Program over a multi-year period, constitute a "pattern of racketeering activity."  The Racketeering Acts are made possible by the regular, repeated, and continuous use of the employees, facilities, and services of E*TRADE and MSSB.

76.    Defendants' Racketeering Acts include the following indictable, predicate offenses:

(a)    **Mail Fraud**: Defendants violate 18 U.S.C. §1341 by sending and receiving materials via United States mail and commercial interstate carriers for the purpose of conducting the fraudulent Bank Deposit Program scheme, including the Program Documents.  As described above, the Program Documents contain material misrepresentations and omissions knowingly and intentionally made by Defendants for the purpose of defrauding customers.

(b)    **Wire Fraud**: Defendants violate 18 U.S.C. §1343 by transmitting and receiving writings and sounds by means of interstate wire communication for the purpose of

conducting the fraudulent Bank Deposit Program scheme.  The writings include the Program Documents, which are posted on E*TRADE's and Morgan Stanley's public websites.  As described above, the Program Documents contain material misrepresentations and omissions knowingly and intentionally made by Defendants for the purpose of defrauding customers.

77.    Defendants conduct the Racketeering Acts as part of a common conspiracy to violate 18 U.S.C. §1962(c) of the RICO Statute.  Defendants, with knowledge and intent, agree to the overall objectives of the conspiracy and, through the Racketeering Acts, participate in a common course of conduct in furtherance of the Bank Deposit Program scheme, including mailing and transmitting the Program Documents to customers.

78.    Plaintiff and the Class suffer damages by reason of Defendants' payment of unreasonably low interest rates on their Bank Deposit Program deposits, in violation of 18 U.S.C. §1962(c)-(d).

79.    Plaintiff's and the Class's injuries are directly and proximately caused by Defendants' racketeering activity.

## COUNT VI

## NEGLIGENCE AGAINST ALL DEFENDANTS

80.    Plaintiff incorporates each of the foregoing paragraphs as though fully set forth herein.

81.    MSSB is the agent of, and investment advisor to, customers enrolled in the Bank Deposit Program, including Plaintiff and the Class.  E*TRADE facilitates the Bank Deposit Program by accepting payments from customers through its online investment platform, which are swept into the Bank Deposit Program.  Morgan Stanley owns and controls MSSB and E*TRADE.

82.    Defendants owe Plaintiff and the Class a duty to act with reasonable care in connection with their cash sweep balances deposited and maintained in the Bank Deposit Program.

83.    Defendants' conduct with respect to the Bank Deposit Program, as described above, is negligent.  By failing to provide Plaintiff and the Class with fair and reasonable sweep interest rates on their cash sweep balances in the Bank Deposit Program, Defendants breach their duty to act with reasonable care.

84.    Defendants' negligence directly and proximately causes harm to Plaintiff and the Class.

**COUNT VII**

**NEGLIGENT MISREPRESENTATIONS AND OMISSIONS
AGAINST ALL DEFENDANTS**

85.    Plaintiff incorporates each of the foregoing paragraphs as though fully set forth herein.

86.    MSSB is the agent of, and investment advisor to, customers enrolled in the Bank Deposit Program, including Plaintiff and the Class.  E*TRADE facilitates the Bank Deposit Program by accepting payments from customers through its online investment platform, which are swept into the Bank Deposit Program.  Morgan Stanley owns and controls MSSB and E*TRADE

87.    Defendants owe Plaintiff and the Class a duty to act with reasonable care in connection with their cash sweep balances deposited and maintained in the Bank Deposit Program.

88.    Defendants negligently make material misrepresentations and omissions in the Program Documents, as described above, which are posted on E*TRADE's and Morgan Stanley's public websites.

89.    Plaintiff and the proposed Class justifiably rely on Defendants' Program Documents and accordingly deposited and maintain cash balances in the Bank Deposit Program to their detriment.

90.    Defendants' material misrepresentations and omissions directly and proximately caused harm to Plaintiff and the members of the proposed Class.

## COUNT VIII

### VIOLATION OF NEW YORK GENERAL BUSINESS LAW §349
### AGAINST ALL DEFENDANTS

91.    Plaintiff incorporates each of the foregoing paragraphs as though fully set forth herein.

92.    Defendants selected New York law as the law governing the Client Agreement.

93.    Defendants' acts and practices with respect to the Bank Deposit Program, as described above, constitute unlawful, unfair, misleading, and deceptive business acts and practices in violation of Section 349 of New York's General Business Law ("GBL").

94.    Defendants' misleading and deceptive business acts and practices with respect to the Bank Deposit Program adversely impacted Plaintiff and the Class, and, therefore, constitute consumer-oriented conduct under GBL §349, which resulted in direct harm to Plaintiff and the Class.

95.    Accordingly, Plaintiff and the Class seek appropriate relief under GBL §349, including injunctive relief and damages.

## COUNT IX

### UNJUST ENRICHMENT AGAINST ALL DEFENDANTS

96.    Plaintiff incorporates each of the foregoing paragraphs as though fully set forth herein.

97.    Defendants financially benefit from the unlawful acts alleged herein by paying Plaintiff and the Class unreasonably low and below market interest payments on their Bank

Deposit Program balances. These unlawful acts cause Plaintiff and the Class to suffer injury and monetary loss.

98.     As a result of the unlawful acts alleged herein, Defendants have been, and continue to be, unjustly enriched at the expense of Plaintiff and the Class.

99.     Defendants have received, and are holding, funds belonging to Plaintiff and the Class, which in equity Defendants should not be permitted to keep but should be required to refund to Plaintiff and the Class.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on his own behalf and on behalf of the Class, prays for relief and judgment, as follows:

A.     Declaring that this action is a proper class action and certifying Plaintiff as Class representative pursuant to Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel, Robbins Geller Rudman & Dowd LLP, as Class Counsel for the proposed Class;

B.     Awarding compensatory damages in favor of Plaintiff and the Class against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.     Awarding treble damages in favor of Plaintiff and the Class;

D.     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including attorneys' fees and expert fees;

E.     Ordering rescission of the Client Agreement and restitution of all fees and other benefits received by Defendants thereunder; and

F.     Such other and further relief as the Court deems appropriate.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

DATED:  November 20, 2024      ROBBINS GELLER RUDMAN
       & DOWD LLP
      STEPHEN R. ASTLEY
      ANDREW T. REES
      RENE A. GONZALEZ
      SCOTT I. DION

               *s/ Stephen R. Astley*
              STEPHEN R. ASTLEY

      225 NE Mizner Boulevard, Suite 720
      Boca Raton, FL  33432
      Telephone:  561/750-3000
      sastley@rgrdlaw.com
      arees@rgrdlaw.com
      rgonzalez@rgrdlaw.com
      sdion@rgrdlaw.com

      LAW OFFICE OF ALFRED G. YATES, JR., P.C.
      ALFRED G. YATES, JR.
      1575 McFarland Road, Suite 305
      Pittsburgh, PA  15216
      Telephone:  412/391-5164
      yateslaw@aol.com

      *Attorneys for Plaintiff*