```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
MARK E. MCKINNEY, NEAL GAGNER, and        :
JAMES BERTONIS, on behalf of themselves and :
all others similarly situated,             :
                                           :
                          Plaintiffs,      :      24-CV-8860 (VEC)
                                           :
                -against-                  :      OPINION & ORDER
                                           :
MORGAN STANLEY, MORGAN STANLEY             :
SMITH BARNEY LLC, and E*TRADE              :
SECURITIES LLC                             :
                                           :
                                           :
                          Defendants.      :
-------------------------------------------------------------- X
```

VALERIE CAPRONI, United States District Judge:

Thomas Simmons, the plaintiff in an action similar to this one that is currently pending in the United States District Court for the District of New Jersey, moved to intervene in this case and to transfer it to the District of New Jersey. He has represented that, following the transfer, he intends to move to consolidate this case with his action and with a separate, earlier-filed action also pending in the District of New Jersey. Plaintiffs and Defendants oppose the motion, arguing that Simmons is not entitled to intervene and that this District is the appropriate venue for this action. The motion is GRANTED; this case is TRANSFERRED to the District of New Jersey.

## BACKGROUND

This motion implicates two actions currently pending in the United States District Court for the District of New Jersey: *Burmin et al. v. E*TRADE Securities LLC et al.*, 24-CV-603 (D.N.J.) ("*Burmin*") and *Simmons v. E*TRADE Securities LLC et al.*, 24-CV-11341 (D.N.J.)

("*Simmons*"). The Court will review the relevant history of those actions, as well as this one, chronologically.

In February 2024, *Burmin* was filed in the District of New Jersey and assigned to the Hon. Esther Salas. The plaintiffs in *Burmin* are individuals who maintained retirement accounts with E*TRADE, a registered broker-dealer and subsidiary of Morgan Stanley. *Burmin*, Compl., Dkt. 1, ¶¶ 1, 20–23. E*TRADE allegedly required retirement accountholders to enroll in its Bank Deposit Sweep Program ("BDP"), which automatically transfers free credit balances in clients' retirement accounts into interest-bearing accounts at banks operated by Morgan Stanley or its affiliates. *Id.* ¶¶ 2, 6–8, 26, 34, 39–42. The agreement through which clients enrolled in the BDP provided that the accounts into which balances were automatically deposited would pay "a reasonable rate of interest." *Id.* ¶ 8. The crux of the complaint, brought on behalf of a putative class of "persons or entities who maintained E*TRADE or E*TRADE from Morgan Stanley retirement accounts" during the relevant time period, is that E*TRADE and Morgan Stanley breached their contractual obligations by not paying reasonable interest rates on retirement sweep accounts. *Id.* ¶¶ 124–25.

The *Burmin* defendants moved to dismiss the complaint. *Burmin*, Mot. to Dismiss, Dkt. 31. That motion has been fully briefed since June 2024. *See Burmin*, Reply Brief in Support of Mot. to Dismiss, Dkt. 38. Judge Salas, meanwhile, has denied a request to stay discovery pending resolution of the motion to dismiss and set a preliminary pretrial scheduling order and discovery schedule in July 2024. *See Burmin,* May 31, 2024, Order, Dkt. 37; *Burmin*, Jul. 2, 2024, Pretrial Scheduling Order, Dkt. 41.

In November 2024, Mark E. McKinney filed this action. Like the *Burmin* plaintiffs, McKinney is an E*TRADE accountholder challenging the interest rates paid pursuant to the

BDP. Compl., Dkt. 1, ¶¶ 1–2. Unlike in *Burmin*, however, the putative class in *McKinney* is not limited to E*TRADE retirement accountholders; rather, it purports to represent "all persons who had cash deposit or balances" in any Morgan Stanley cash sweep account administered under the BDP. *Id.* ¶ 41.

At the time *McKinney* was filed, two other BDP-related cases against Morgan Stanley were pending before the Undersigned: *Estate of Bernard J. Sherlip et al. v. Morgan Stanley et al.*, 24-CV-4571 (S.D.N.Y.) ("*Sherlip*"), and *Safron Capital Corp. v. Morgan Stanley et al.*, 24-CV-7750 (S.D.N.Y.) ("*Safron*"). Those cases do not involve allegations against E*TRADE and do not name it as a defendant. A day after *McKinney* was filed, the parties in *Sherlip* and *Safron* moved jointly to consolidate those two cases. *See Sherlip*, Nov. 21, 2024, Letter Mot., Dkt. 48. The *Safron* plaintiff — who was represented by the same attorneys who represent the *McKinney* plaintiffs — also moved to consolidate *McKinney* with *Sherlip* and *Safron*. The defendants and the *Sherlip* plaintiffs opposed the three-way consolidation, arguing that the E*TRADE-related allegations in *McKinney* made it distinct. *See Sherlip*, Nov. 27, 2024, Letter Mot., Dkt. 54, at 3–6. On December 9, 2024, the Court consolidated *Sherlip* and *Safron* but declined to consolidate *McKinney*. *See* Dec. 9, 2024, Order, Dkt. 22, at 2. Instead, this Court, which had accepted *McKinney* as a related case to *Sherlip*, directed the parties in *McKinney* to move for consolidation or for transfer to another district, if desired, by December 20, 2024. *Id.*

On December 19, 2024, Thomas Simmons, who is represented by the same attorneys who represent the *Sherlip* plaintiffs, sued E*TRADE, Morgan Stanley, and Morgan Stanley Smith Barney LLC (the same defendants named in *McKinney*) in the District of New Jersey. His complaint, like the one in *McKinney*, challenges the interest rates paid on E*TRADE BDP accounts. *Simmons*, Compl., Dkt. 1, ¶¶ 1–2. The putative class in *Simmons* is similar to the one

3

in *McKinney*, although the *Simmons* putative class consists specifically of "[c]lients of E*TRADE and E*TRADE from Morgan Stanley who had cash deposits or balances in E*TRADE's Cash Sweep Programs or Morgan Stanley's Bank Deposit Program," *id.* ¶ 120, whereas the *McKinney* putative class encompasses "all persons" — not just E*TRADE customers — "who had cash deposits or balances" in Morgan Stanley's BDP. Compl. ¶ 41. The *Simmons* complaint alleges a subclass consisting solely of E*TRADE retirement account holders, reminiscent of the proposed class in *Burmin*. *Simmons*, Compl. ¶ 121; *Burmin*, Compl. ¶ 124.

Neither party in *McKinney* took advantage of the Court's invitation to seek consolidation or transfer. Instead, Simmons filed a motion to intervene in *McKinney* and to transfer the action to the District of New Jersey for consolidation with *Burmin* and *Simmons*. *See* Mot. to Intervene & Transfer, Dkt. 25.

The following day, December 21, 2024, Neal Gagner, who is represented by the attorneys who represent Plaintiff McKinney, filed another action in this District raising allegations that are materially identical to those in *McKinney*. *See Gagner v. Morgan Stanley et al.*, 24-CV-9875 (S.D.N.Y.) ("*Gagner*"), Compl., Dkt. 1. Several days later, the parties in *McKinney* and *Gagner* moved jointly to consolidate the two cases. Jan. 3, 2025, Letter Mot., Dkt. 33. The Court consolidated the cases, ordered Plaintiffs to file an amended complaint incorporating Gagner's allegations, denied Simmons's motion to intervene and transfer as moot, and invited him to renew his motion after a new operative complaint had been filed. Jan. 7, 2025, Order, Dkt. 36. Plaintiffs filed an Amended Complaint, Dkt. 43, and shortly thereafter Simmons filed the instant

4

Motion to Intervene and Transfer, Dkt. 47.[1]  Plaintiffs and Defendants both oppose the Motion. *See* Pl. Opp, Dkt. 53; Def. Opp., Dkt. 54.

Around the time that the *Gagner* complaint was filed, McKinney moved to intervene in both *Burmin* and *Simmons* and to transfer those actions to this District or stay proceedings in the District of New Jersey pending the resolution of this action.  *See Burmin*, Mot. to Intervene & Transfer or Stay, Dkt. 47; *Simmons*, Mot. to Intervene & Transfer or Stay, Dkt. 7.  Defendants supported those motions.  *See Burmin*, Def. Resp. to Mot. to Intervene & Transfer or Stay, Dkt. 51; *Simmons*, Def. Resp. to Mot. to Intervene & Transfer or Stay, Dkt. 17.  The plaintiffs in *Burmin* and *Simmons* opposed, with the *Simmons* plaintiffs arguing that the District of New Jersey is the appropriate venue, *see Simmons*, Opp. to Mot. to Intervene & Transfer or Stay, Dkt. 18, at 20–25, and the *Burmin* plaintiffs arguing, among other things, that their claims are "unique to E*TRADE self-directed *retirement* customers."  *Burmin*, Opp. to Mot. to Intervene & Transfer or Stay, Dkt. 52, at 3.  At a subsequent status conference, the *Burmin* plaintiffs indicated that, although they would "likely oppose" a motion to consolidate *Simmons* with *Burmin*, they recognized that it would be beneficial to "work together and coordinate" with counsel in the *Simmons* action on discovery and case management.  *See Burmin*, Jan. 28, 2025, Teleconference Tr., Dkt. 55, at 7:10–24.

---

[1]     After this Motion was fully briefed, yet another plaintiff, represented by the attorneys who represent the *McKinney* plaintiffs, filed another near-identical action in this District.  *See Bertonis v. Morgan Stanley et al.*, 25-CV-1598 (S.D.N.Y.).  The Court granted the parties' joint motion to consolidate the newly filed case with *McKinney* and directed the parties and Simmons to file letters if the post-consolidation Second Amended Complaint altered any of the arguments set forth in the instant Motion to Intervene and Transfer.  *See* Mar. 14, 2025, Order, Dkt. 60.  No letter was filed.

5

# DISCUSSION

## I. Simmons's Motion for Permissive Intervention is Granted

Federal Rule of Civil Procedure 24 sets forth the standards for intervention as of right and permissive intervention. Simmons does not specify which type of intervention he seeks, so the Court will consider the Motion under both frameworks.

### A. Simmons is Not Entitled to Intervene as of Right

To intervene as of right pursuant to Federal Rule of Civil Procedure 24(a), a movant must "(1) timely file an application, (2) show an interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the action, and (4) show that the interest is not protected adequately by the parties to the action. . . . Failure to satisfy any one of these four requirements is a sufficient ground to deny the application." *Floyd v. City of New York*, 770 F.3d 1051, 1057 (2d Cir. 2014) (cleaned up). "While accepting as true the non-conclusory allegations of the motion, courts applying Rule 24 must be mindful that each intervention case is highly fact specific and tends to resist comparison to prior cases." *Kamdem-Ouaffo v. Pepsico, Inc.*, 314 F.R.D. 130, 134 (S.D.N.Y. 2016) (citation and internal quotation marks omitted).

The parties do not dispute that Simmons has demonstrated an interest in this action that may be impaired by its disposition, given that he is an E*TRADE customer prosecuting materially similar claims in another forum. *See* Pl. Opp. at 7; Def. Opp. at 8–11. The Court's analysis turns, therefore, on whether Simmons's application to intervene was timely and whether he has shown that his interests are not protected adequately by the parties to the action.

#### i. Simmons's Application Was Timely

In determining whether a motion to intervene is timely, courts may consider "(1) how long the applicant had notice of the interest before it made the motion to intervene; (2) prejudice to existing parties resulting from any delay; (3) prejudice to the applicant if the motion is denied;

and (4) any unusual circumstances militating for or against a finding of timeliness." *Frankel v. Cole*, 490 F. App'x 407, 408 (2d Cir. 2013) (summary order) (quoting *U.S. v. Pitney Bowes, Inc.*, 25 F.3d 66, 70 (2d Cir. 1994)). The question whether intervention is timely must be "evaluated against the totality of the circumstances before the court." *D'Amato v. Deutsche Bank*, 236 F.3d 78, 84 (2d Cir. 2001).

Here, the relevant factors support the conclusion that Mr. Simmons's motion was timely. As to the first factor, Simmons moved to intervene approximately one month after the complaint in this action was filed. That is well within a reasonable timeframe. *See Bldg. & Realty Inst. of Westchester & Putnam Ctys., Inc. v. New York*, No. 19-CV-11285, 2020 WL 5658703, at *7 (S.D.N.Y. Sept. 23, 2020) (collecting cases in which courts have recognized motions to intervene as timely where intervenors waited as long as five months to move).

As to the second factor, Plaintiffs claim that the timing of Simmons's motion prejudiced them because they construed the Court's December 9, 2024, Order directing the parties to file any motions to transfer or consolidate by December 20, 2024, to preclude non-parties, such as Simmons, from moving to intervene. Pl. Opp. at 7. Hence, Plaintiffs claim, they chose not to seek transfer of this case to another district and instead moved in New Jersey (three weeks after Simmons's Motion was filed) to transfer *Burmin* and *Simmons* to this District. *Id*. As an initial matter, the Court cannot make sense of Plaintiffs' averment that they interpreted the December 9, 2024, Order, which says nothing about third-party intervention, to prevent Simmons or any other interested party from following the ordinary procedures for intervention set forth in Rule 24. Equally baffling is Plaintiffs' suggestion that they would have altered their litigation strategy if they had known Simmons was going to file this Motion. Regardless, surprise is not the same as prejudice, and neither party has provided any explanation why Simmons's decision to seek

intervention and transfer in accordance with the schedule the Court set for the parties has harmed them.

The third factor — potential prejudice to Simmons if his motion is denied — also tilts in favor of deeming intervention timely. The parties agree that Simmons has an interest in the subject and disposition of this action, *see id.*, and failure to allow intervention would deprive him of the opportunity to be heard on issues of importance to him.

The fourth factor is irrelevant because neither party has argued that there are unusual circumstances militating for or against a finding of timeliness.

In sum, Simmons's motion to intervene is timely.

>    ii.   *Simmons Has Not Shown that His Interests Are Not Protected Adequately by the Parties in This Action*

"Determination of the adequacy of existing representation necessarily involves an assessment of factors which are within the discretion of the district court." *U.S. Postal Serv. v. Brennan*, 579 F.2d 188, 191 (2d Cir. 1978) (citations omitted). A nonparty's burden of demonstrating that his interests "would not be protected adequately by the parties to the action" is higher "when the movant seeks the same relief as one of the parties to the action." *Royal Park Invs. SA/NV v. U.S. Bank Nat'l Ass'n*, 356 F. Supp. 3d 287, 296–97 (S.D.N.Y. 2018) (citing *Wash. Elec. Co-op, Inc. v. Mass. Mun. Wholesale Elec. Co.*, 922 F.2d 92, 98 (2d Cir. 1990)). Courts in this Circuit "have routinely held that a party's status as an absent class member, standing alone, does not meet Rule 24(a)'s impairment requirement" in the context of a putative class action. *Neversink Gen. Store v. Mowi USA, LLC*, No. 20-CV-9293, 2021 WL 1930320, at *4 (S.D.N.Y. May 13, 2021) (collecting cases).

Simmons seeks the same relief as Plaintiffs and the putative class, but argues that, because he will seek consolidation with the earlier-filed *Burmin* case and the plaintiffs in that

8

case oppose transfer to this District, neither his interests nor those of the *Burmin* plaintiffs are "adequately protected here." Simmons Reply, Dkt. 56, at 4. Simmons's disagreement with the parties in this case about case management strategy is not evidence of interest misalignment. More fundamentally, Simmons has "no legally cognizable interest" in controlling the E*TRADE litigation, given that "no class has been certified in any of the New York or [New Jersey] actions, so each group of plaintiffs only has a direct and cognizable interest in its own proceeding." *Authors Guild v. Open AI, Inc.*, 345 F.R.D. 585, 590 (S.D.N.Y. 2024); *see also Calderon v. Clearview AI, Inc.*, No. 20-CV-1296, 2020 WL 2792979, at *5 (S.D.N.Y. May 29, 2020) ("Unless and until (1) a class is certified; (2) [the plaintiff] is found to be an appropriate class representative, and (3) his counsel are deemed appropriate class counsel, . . . he has no right to intervene in any of the actions pending here — even if all the actions in this district were identical to his."). Accordingly, Simmons has not made a showing sufficient to overcome the presumption that his interests are protected adequately by Plaintiffs and the putative class in this action.

### B. Permissive Intervention is Appropriate

Even if a movant is not entitled to intervene as of right pursuant to Rule 24(a), the Court may nevertheless allow permissive intervention pursuant to Rule 24(b) where the motion is timely and the movant "has a claim or defense that shares with the main action a common question of law or fact." "A district court's discretion under Rule 24(b) is 'broad.'" *335-7 LLC v. City of New York*, No. 20-CV-1053, 2020 WL 3100085, at *3 (S.D.N.Y. June 11, 2020) (quoting *Restor-A-Dent Dental Labs., Inc. v. Certified Alloy Prods., Inc.*, 725 F.2d 871, 876 (2d Cir. 1984)). "The 'principal consideration' for permissive intervention is 'whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.'" *Battle v. City of New York*, No. 11-CV-3599, 2012 WL 112242, at *6 (S.D.N.Y. Jan. 12, 2012)

(quoting *Brennan*, 579 F.2d at 191). The Court may also consider "whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented." *True Return Sys. LLC v. Compound Protocol*, No. 22-CV-8483, 2023 WL 6211815, at *2 (S.D.N.Y. Sept. 25, 2023) (quoting *Brennan*, 579 F.2d at 191–92) (internal quotation marks omitted).

There is no dispute that Simmons has claims and defenses that share common questions of law and fact with this action. For the reasons set forth in Section I.A.i, *supra*, his motion was timely and his intervention is unlikely to unduly delay or prejudice the existing parties. The "principal consideration" of Rule 24(b), therefore, counsels in favor of permitting intervention. *Battle*, 2012 WL 112242, at *6.

Additionally, allowing Simmons to intervene for the purpose of moving to transfer would help the Court ensure that this case proceeds equitably and efficiently. The unusual posture of this case in relation to *Burmin* and *Simmons* is instructive. Plaintiffs and Defendants oppose Simmons's motion to intervene in this case, but in *Burmin* and *Simmons*, Plaintiffs have filed their own motions to intervene and transfer those actions to this District. *Burmin*, McKinney Mem. in Support of Mot. to Intervene & Transfer, Dkt. 48; *Simmons*, McKinney Mem. in Support of Mot. to Intervene & Transfer, Dkt. 8. Those motions warn against "the inequities of duplicate class actions proceeding in multiple districts." *Burmin*, McKinney Mem. in Support of Mot. to Intervene & Transfer at 14; *Simmons*, McKinney Mem. in Support of Mot. to Intervene & Transfer at 14. Defendants have supported Plaintiffs' motions, arguing that "the transfer of *Burmin* and *Simmons* . . . will promote judicial efficiency by ensuring that all claims relating to E*TRADE's various cash-sweep programs are litigated together in one court, avoiding the risk of conflicting decisions from piecemeal litigation in multiple separate cases, in different

districts." *Burmin*, May 6, 2025, Def. Letter, Dkt. 67, at 2. Given the parties' apparent agreement that coordinating the different E*TRADE cases before a single court would benefit all involved, the unavoidable conclusion is that the instant Motion — which gives this Court an opportunity to consider that proposition for itself — would contribute significantly to the development of important issues in this case. Because permissive intervention is appropriate, Simmons's Motion to Intervene is granted.

**II.     Transfer to the District of New Jersey is Appropriate in Light of the First-Filed Rule**

Simmons seeks to transfer this case to the District of New Jersey by invoking the so-called first-filed rule. "The first-filed rule states that, in determining the proper venue, where there are two competing lawsuits, the first suit should have priority." *New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 112 (2d Cir. 2010) (cleaned up). "The classic application of the first-filed rule is where mirror-image lawsuits between the same parties are filed in different venues. However, the existence of non-overlapping claims or parties does not disqualify lawsuits from the first-filed rule." *Liberty Mut. Ins. Co. v. Fairbanks Co.*, 17 F. Supp. 3d 385, 393 (S.D.N.Y. 2014) (cleaned up). Rather, the rule may be invoked at the discretion of the district judge, including in cases involving "parallel class actions filed against the same defendant[s] and involving claims based, at least in substantial part, on the same law." *Bukhari v. Deloitte & Touche LLP*, No. 12-CV-4290, 2012 WL 5904815, at *3 (S.D.N.Y. Nov. 26, 2012) (collecting cases); *see also Thomas v. Apple-Metro, Inc.*, No. 14-CV-4120, 2015 WL 505384, at *3 (S.D.N.Y. Feb. 5, 2025) ("[C]ourts in this Circuit frequently apply the first-filed rule to cases that are similar, but not identical.").

This case and *Burmin* are sufficiently similar to warrant application of the first-filed rule. The claim at the heart of both cases is identical: E*TRADE breached its duties to customers by not paying reasonable interest rates on its BDP accounts. That *Burmin* is more narrowly tailored

11

to address only E*TRADE retirement accounts, and that this case contains more claims than *Burmin*, does not preclude a finding that the cases are substantially similar, given that the cases involve the same defendants and the same sweep program (the BDP). *See Jeffrey v. DTG Operations, Inc.*, No. 19-CV-7209, 2020 WL 1536323, at *3 (E.D.N.Y. Mar. 31, 2020) (applying the first-filed rule in an overtime compensation case involving rental car employees, notwithstanding the fact that the earlier-filed case only concerned rental car employees stationed at airports); *Oleg Cassini, Inc. v. Serta, Inc.*, No. 11-CV-8751, 2012 WL 844284, at *3 (S.D.N.Y. Mar. 13, 2012) (for first-filed rule to apply, "issues need not be identical, and the named parties need not be entirely the same provided that they represent the same interests").

It is irrelevant that Simmons is not (at least at this time) a party in *Burmin* and that the *Burmin* plaintiffs have not themselves moved to intervene in and transfer this action. The purpose of the first-filed rule is not to bestow "a prize to the winner of a race to the courthouses." *Emps. Ins. of Wausau v. Fox Ent. Grp., Inc.*, 522 F.3d 271, 275 (2d Cir. 2008) (quoting *Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 218 (2d Cir. 1978), *abrogated on other grounds by Pirone v. MacMillan, Inc.*, 894 F.2d 579 (2d Cir. 1990)). Rather, it is to promote "wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Wyler-Wittenberg v. MetLife Home Loans, Inc.*, 899 F. Supp. 2d 235, 244 (E.D.N.Y. 2012) (quoting *Kerotest Mfg. Co. v. C–O–Two Fire Equipment Co.*, 342 U.S. 180, 183 (1952)). As the *Burmin* plaintiffs have represented to Judge Salas, even if this case and *Simmons* are not consolidated with *Burmin*, the considerable factual similarities among the three cases suggest that "the parties can accomplish a lot by coordinating discovery" before a single court. *Burmin*, Jan. 28, 2025, Teleconference Tr. at 7:10–24; *see also Burmin*, Pl. Opp. to Mot. to Intervene & Transfer, Dkt. 52, at 4 (*Burmin* plaintiffs speculating that "Judge Caproni is likely

to grant Simmons' anticipated motion to transfer *McKinney* to [the District of New Jersey] under the first-filed rule" and that McKinney's motion to intervene in and transfer *Burmin* "is an effort to front-run that result"). Those benefits are sufficient to justify invoking the first-filed rule, even though the *Burmin* plaintiffs have not moved the Court to do so.

  Having concluded that the first-filed rule applies, the Court may decline to transfer this case to the District of New Jersey only if (1) "the balance of convenience favors the second-filed action," or (2) "special circumstances warrant giving priority to the second suit." *Emps. Ins. of Wausau*, 522 F.3d at 275 (internal quotation marks omitted). Neither party argues that special circumstances apply, so the Court will focus on the first exception. When assessing the "balance of convenience," courts generally consider the same factors that are relevant to a motion to transfer venue pursuant to 28 U.S.C. § 1404(a): "(1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of the parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, [and] (7) the relative means of the parties." *Id*. "[A]n even or inconclusively titled 'balance of convenience' would ordinarily support application of the first-filed rule." *Columbia Pictures Indus., Inc. v. Schneider*, 435 F. Supp. 742, 751 (S.D.N.Y. 1977).

  Here, almost all of the convenience factors are neutral. E*TRADE is headquartered in New Jersey and Morgan Stanley is headquartered in New York, meaning both forums are likely to have relevant documents and witnesses. *See McKinney*, Compl. ¶¶ 11–12. More important, Judge Salas's courtroom in Newark and the Undersigned's courtroom in Manhattan are less than 15 miles apart. *See* Granziano Decl. Ex. E, Dkt. 57-2. It defies credulity to suggest that any party or witness would be meaningfully inconvenienced, that any witness or source of proof

13

would be considerably harder to compel or access, or that the locus of operative facts would become too attenuated if this case proceeded on one side of the Hudson River rather than the other. The sole factor that tilts clearly in favor of one court is the first, the plaintiff's choice of forum, which favors the District of New Jersey because that is where the first-in-time *Burmin* plaintiffs brought suit. *See Fandino v. Amalgam Ent., LLC*, No. 09-CV-8325, 2010 WL 607819, at *3 (S.D.N.Y. Feb. 19, 2010) ("The first factor, the plaintiff's choice of forum, favors the forum of the first-filed action."); *Magnacoustics, Inc. v. Integrated Computer Sols., Inc.*, No. 17-CV-4967, 2018 WL 6050882, at *3 (E.D.N.Y. Nov. 19, 2018) (first-filing plaintiff "receive[s] the benefit" of this factor).

Accordingly, the Court finds no reason to deviate from the first-filed rule in this case.

## CONCLUSION

For the foregoing reasons, Plaintiff-Intervenor Thomas Simmons's motion to intervene and transfer is GRANTED. The Clerk of the Court is respectfully directed to TERMINATE all open motions and to TRANSFER this case to the United States District Court for the District of New Jersey.

**SO ORDERED.**

**Date: July 25, 2025**
**New York, New York**

_____
**VALERIE CAPRONI**
**United States District Judge**

14